UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
AGUSTIN CAMANO ANZUREZ,                         :

                Plaintiff,                         :        <u>REPORT & RECOMMENDATION</u>

                              :        20 Civ. 3828 (JMF) (GWG)

     -v.-                                         :

LA UNICA CARIDAD INC., et al.,                  :

              Defendants.                        :
-------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiff Agustin Camano Anzurez ("Camano") brought this action against defendant La

Unica Caridad Inc. ("La Unica"), and two non-defaulting individual defendants seeking unpaid

wages under the New York Labor Law §§ 190 et seq. ("NYLL") and the Fair Labor Standards

Act, 29 U.S.C. §§ 201 et seq. ("FLSA").  A default has been entered against La Unica.  Camano

now seeks damages pursuant to the default.[1]

I. <u>BACKGROUND</u>

    A. <u>Procedural Background</u>

       Camano filed the original complaint in this action on May 18, 2020 (Docket # 1)

("Comp."), which named three individuals and La Unica as defendants, <u>see</u> <u>id.</u> ¶¶ 23-26.

Camano filed a motion for default judgment on July 16, 2020 (Docket # 17), and the Clerk

issued a certificate of default for La Unica on July 17, 2020 (Docket # 20).

---

[1]  Letter from Catalina Sojo, filed February 4, 2021 (Docket # 82) ("PFF"); Declaration of Catalina Sojo in Support, filed February 4, 2021 (Docket # 82-1) ("Sojo Decl."); Declaration of Agustin Camano Anzurez in Support, filed February 4, 2021 (Docket # 82-4) ("Camano Decl."); Attorney Invoice, filed February 4, 2021 (Docket # 82-6) ("Attorney Invoice"); Letter from Catalina Sojo, filed April 8, 2021 (Docket # 85) ("Offset Let."); Exhibit to Pleading, filed April 15, 2021 (Docket # 87) ("Damages Chart").

On August 12, 2020, the district court granted Camano leave to file an amended complaint.  (Docket # 29).  La Unica was given "three weeks in which to answer or otherwise respond to the amended complaint."  Id. at 2.  If La Unica failed to respond, however, Camano was instructed that he did not "need to refile the motion for default judgment."  Id.

Camano filed an amended complaint on August 12, 2020, changing the name of one of the individual defendants and omitting another.  See Amended Complaint (Docket # 30) ¶¶ 3, 24-25  ("Am. Comp.").  On October 5, 2020, an attorney appeared on behalf of the individual defendants (Docket # 42), but not La Unica.  The district court ordered that a default be entered against La Unica on October 29, 2020.  (Docket # 58).

Thereafter the individual defendants made an offer of judgment pursuant to Fed. R. Civ. P. 68, which Camano accepted.  (See Docket # 70).  On December 30, 2020, judgment was entered against the individual defendants in the amount of $22,000.00.  (Docket # 72).

On January 4, 2021, the case was referred to the undersigned for an inquest on damages as to La Unica.  (Docket # 78).  This Court issued a scheduling order directing Camano to file proposed findings of fact and conclusions of law.  (Docket # 76) ("Scheduling Order").  Camano filed proposed findings of fact and conclusions of law on February 4, 2021.  See PFF.  After reviewing these filings, the Court noted an apparent error in Camano's submissions as to damages.  See Order, filed April 8, 2021 (Docket # 86).  Camano then submitted an updated damages chart.  See Damages Chart.  La Unica has failed to respond to any of the filings.

In light of La Unica's default, Camano's properly pleaded allegations in his amended complaint, except those related to damages, are accepted as true.  See, e.g., City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations

contained in the complaint.") (punctuation omitted); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . . factual allegations as true and draw all reasonable inferences in [plaintiff's] favor."). As to damages, "[t]he district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999). This inquiry requires the District Court to: (1) "determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[] plaintiff's evidence supporting the damages to be determined under this rule." Id.

Camano bears the burden of establishing his entitlement to the amount sought. See Trs. of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc., 2018 WL 1587058, at *5 (S.D.N.Y. Mar. 28, 2018). In the case of a default where the defendant has never appeared, "a court may base its determination of damages solely on the plaintiff's submissions." Id. (citing Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). While a court must "take the necessary steps to establish damages with reasonable certainty," Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997), a court need not hold a hearing "as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment," Fustok, 873 F.2d at 40.

Here, the Court's Scheduling Order notified the parties that the Court may conduct the inquest into damages based upon the written submissions of the parties, but that a party may seek an evidentiary hearing. See Scheduling Order ¶ 5. No party has requested an evidentiary hearing. Moreover, because Camano's submissions provide a basis for an award of damages, no hearing is required.

B.  <u>Facts Relating to Liability</u>

La Unica, which did business as "La Caridad 78 Restaurant," Am. Comp. ¶ 1, is a New

York corporation and employed Camano, <u>id.</u> ¶¶ 20, 23.  Camano "is an adult individual residing

in Bronx County, New York."  <u>Id.</u> ¶ 19.  Camano worked for La Unica "from approximately

2000 until on or about February 5, 2020."  <u>Id.</u> ¶ 38.  Camano

> was ostensibly employed as a delivery worker.  However, he was required to
> spend a considerable part of his work day performing non-tipped duties, including
> but not limited to food preparing, sweeping and mopping, dishwashing, taking out
> the garbage, twisting and tying up cardboard boxes, carrying down and stocking
> deliveries in the basement, bringing up sodas from the basement and refilling the
> refrigerator.

<u>Id.</u> ¶ 5.

From "March 2014 until on or about October 2019," Camano worked 73.5 hours per

week.  Am. Comp. ¶ 44.  From "November 2019 until on or about December 2019," he worked

66 hours per week.  <u>Id.</u> ¶ 45.  "During the month of December 2019," Camano worked 33 hours

per week, <u>id.</u>, and from "January 2020 until on or about February 5, 2020," he worked 22 hours

per week, <u>id.</u> ¶ 46.  From "March 2014 until on or about December 2018," Camano was paid

$420 per week," <u>id.</u> ¶ 48, from "January 2019 until on or about December 2019," he was paid

$470 per week, <u>id.</u> ¶ 49, and from "January 2020 until on or about February 5, 2020," Camano

was paid $100 per day, <u>id.</u> ¶ 50, except "for his last two days of work" when La Unica failed to

pay him at all, <u>id.</u> ¶ 51.

La Unica "maintained a policy and practice of requiring . . . Camano . . . to work in

excess of 40 hours a week without paying him appropriate minimum wage, spread of hours pay,

and overtime compensation."  Am. Comp. ¶ 62.  La Unica also failed to notify Camano "that his

tips were being included as an offset for wages," <u>id.</u> ¶ 54, and "did not account for these tips in

any daily or weekly accounting of . . . Camano's wages," <u>id.</u> ¶ 55.  La Unica did not provide

Camano "an accurate statement of wages," id. ¶ 58, and "did not give any notice . . ., in English [or] in Spanish ([his] primary language), of his rate of pay, employer's regular pay day," or any other relevant information, id. ¶ 60. La Unica also "failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL." Id. ¶ 78. Additionally, Camano was required to "purchase tools of the trade with his own funds — including bicycles, tires, a vest, and a helmet." Id. ¶ 61 (punctuation omitted).

Camano's proposed findings indicate he seeks the following: "$251,309.75 in unpaid minimum wages, overtime wages, and spread of hours," PFF ¶ 50; "$251,309.75 in liquidated damages," id. ¶ 53; $10,000.00 for notice violations under the NYLL, see id. ¶ 55; pre-judgment interest at a rate of 9% per year to "be calculated from February 16, 2017," id. ¶ 58; and $10,850.60 in attorney's fees and $470.00 in costs, id. ¶ 62.[2]

## II.  DISCUSSION

Camano brought suit under both the NYLL and the FLSA.  It is settled that while

> a plaintiff may be entitled to recover unpaid minimum wages and overtime pay
> under both the FLSA and the NYLL, he or she may not recover twice.  Instead,
> where a plaintiff is entitled to damages under both federal and state wage law, a
> plaintiff may recover under the statute which provides the greatest amount of
> damages.

Gonzalez Mercedes v. Tito Transmission Corp., 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018) (punctuation and internal citation omitted), adopted by, 2019 WL 102007 (S.D.N.Y. Jan.

---

[2]  Camano also requests $320.00 for purchase of "tools of the trade" required by La Unica.  See Damages Chart at 2.  Although Camano's declaration affirms he was required "to purchase tools of the trade with [his] own funds," Camano Decl. ¶ 19, he fails to state how much he had to pay and has submitted no evidence on this question.

4, 2019).  Because the NYLL provides for the greater recovery in Camano's case, we address only the provisions of the NYLL.

A.  Statute of Limitations

The statute of limitations is six years for claims under the NYLL, N.Y. Lab. Law § 663(3), and two years under the FLSA, unless the violations were "willful," in which case the limitations period increases to three years, 29 U.S.C. § 255(a).  Because only the provisions of the NYLL are at issue, we need not consider whether La Unica's violations were willful.

Camano worked for La Unica "from approximately 2000 until on or about February 5, 2020."  Camano Decl. ¶ 4.  He argues his "claims are covered from at least March, 2014 to the end of his employment."  PFF ¶ 60.  However, Camano filed the initial complaint in this action on May 18, 2020.  See Comp.  Therefore, Camano may recover only for NYLL violations that occurred on or after May 18, 2014.  See Gonzalez Mercedes, 2018 WL 7291452, at *10 n.3 (plaintiff may recover under NYLL only for the period "six years prior to the date he filed his Complaint").

B.  Unpaid Minimum Wage

Throughout his employment, Camano was paid a flat weekly rate, except for the last five weeks when he was paid a daily rate.  See Camano Decl. ¶¶ 13-15; Am. Comp. ¶¶ 48-50.  To determine the regular rate of pay for restaurant employees, the court must "divid[e] the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-3.5(b); accord Villanueva v. 179 Third Ave. Rest Inc., 500 F. Supp. 3d 219, 235 (S.D.N.Y. 2020), adopted by, 2021 WL 2139441 (S.D.N.Y. May 26, 2021); Pichardo v. El Mismo Rincon Latino Corp., 2018 WL 4101844, at *6 (E.D.N.Y. Aug. 7,

6

2018), adopted by, 2018 WL 4100480 (E.D.N.Y. Aug. 28, 2018).  Using this formula, Camano's hourly rate varied throughout his employment.

From May 18, 2014, through December 2018 it was $10.50 per hour ($420 per week / 40 hours per week).  See Camano Decl. ¶¶ 9, 13.  From January 2019 through December 15, 2019, it was $11.75 per hour ($470 per week / 40 hours per week).  See Camano Decl. ¶¶ 9-10, 14; Damages Chart at 1.  From December 16, 2019, through December 31, 2019, it was $14.24 per hour ($470 per week / 33 hours per week).  See Camano Decl. ¶¶ 10, 14; Damages Chart at 1. Finally, from January 1, 2020, through February 5, 2020, it was $9.09 per hour ($200 per week / 22 hours per week).  See Camano Decl. ¶¶ 11, 15.

Camano worked for La Unica in New York City, see Camano Decl. ¶ 3; Am. Comp. ¶ 23, and seeks to be compensated at the minimum wage rate for large employers in New York City for the period after December 31, 2016, see PFF ¶ 38(b).  However, Camano did not allege the number of employees that worked for La Unica in his amended complaint and his application for damages failed to supply any evidence to support his claim that La Unica employed 11 or more employees, which is the minimum number to be considered a "large employer," see N.Y. Lab. Law § 652(1)(a)(i); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2(a)(1)(i)(a). Accordingly, Camano must be compensated at the rate for small employers in New York City. See N.Y. Lab. Law § 652(1)(a)(ii); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2(a)(1)(i)(b); see also Reyes v. Cafe Cousina Rest. Inc., 2019 WL 5722475, at *9 (S.D.N.Y. Aug. 27, 2019) ("[N]either the Complaint nor the Declarations filed in this case allege that Defendants employed 11 or more people at Cafe Cosina, such that the establishment would qualify as a 'large employer.'  Given the lack of any support for Plaintiff's assumption, this Court will, where applicable, apply the minimum-wage rates for 'small employers,' as defined by N.Y. Lab. Law

§ 652(1)(a)(ii).") (internal citation omitted), adopted by, 2019 WL 5722109 (S.D.N.Y. Oct. 7, 2019).

The New York minimum wage rate for La Unica's employees during the relevant periods was: $8.00 per hour as of December 31, 2013, $8.75 per hour as of December 31, 2014, $9.00 per hour as of December 31, 2015, $10.50 per hour as of December 31, 2016, $12.00 per hour as of December 31, 2017, $13.50 per hour as of December 31, 2018, and $15.00 per hour as of December 31, 2019.  See N.Y. Lab. Law § 652(1), (1)(a)(ii); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.2(a)(1)(i)(b).  Camano was therefore paid at or above the minimum wage from May 18, 2014, through December 30, 2017, see Camano Decl. ¶¶ 9, 13, and from December 16, 2019, through December 31, 2019, see id. ¶¶ 10, 14.  La Unica otherwise failed to pay Camano the required minimum wage.  See id. ¶¶ 9-11, 13-15.

Under certain conditions, an employer is entitled to pay an employee an hourly wage less than the standard minimum wage if the employee receives tips from customers for his or her service, see N.Y. Comp Codes R & Regs. tit. 12, § 146-1.3, commonly known as a "tip credit." New York law, however, requires that an employer provide an employee notice before it may take advantage of the tip credit.  See N.Y. Comp Codes R & Regs. tit. 12, § 146-2.2; accord Inclan v. N.Y. Hosp. Grp., Inc., 95 F. Supp. 3d 490, 498 (S.D.N.Y. 2015).  The burden is on the defendant to show that it has complied with the tip-credit requirement.  See N.Y. Comp Codes R. & Regs. tit. 12, § 146-2.2(d) ("The employer has the burden of proving compliance with the notification provisions of [the NYLL].");  Villar v. Prana Hosp., Inc., 2017 WL 1333582, at *3 n.4 (S.D.N.Y. Apr. 11, 2017), adopted by, 2018 WL 3579841 (S.D.N.Y. July 25, 2018).

Because La Unica has not appeared, it has not met its burden to prove that such a notice was provided to Camano.  Moreover, Camano affirms he was not provided any such notice.  See

Camano Decl. ¶ 20.  Because La Unica is "not entitled to any tip credit, [it was] required to pay [Camano] full minimum wage, rather than the lower minimum wage for tipped workers." Agureyev v. H.K. Second Ave. Rest., Inc., 2021 WL 847977, at *7 (S.D.N.Y. Mar. 5, 2021) (punctuation omitted).  Camano is therefore owed the difference between his actual wages and the minimum wage.  Accordingly, as reflected on the "Minimum Wage Chart," annexed as Exhibit A, Camano should be awarded $7,200.00 for unpaid minimum wage.[3]

   C.  Unpaid Overtime Wages

   NYLL requires an employer to pay "an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.  Where the plaintiff has been paid below the minimum wage, "the appropriate overtime rate [is] one-and-a-half times the minimum wage rate."  Nana v. Le Viking LLC, 2019 WL 3244181, at *3 (S.D.N.Y. July 19, 2019).

   From May 18, 2014, through October 2019 Camano worked 73.5 hours per week, see Camano Decl. ¶ 9, and from November 2019 through December 15, 2019, Camano worked 66 hours per week, see id. ¶ 10; Damages Chart at 1.  For the period of May 18, 2014, through December 30, 2017, Camano should have been compensated at an overtime rate of $15.75 per hour (10.50 * 1.5).  For the period of December 31, 2017, through December 31, 2018, Camano should have been compensated at an overtime rate of $18.00 per hour (12.00 * 1.5), and for the period of January 1, 2019, through December 15, 2019, Camano should have been compensated

---

[3]  While Camano alleges that he was not paid for his last two days of work, see Camano Decl. ¶ 16; Am. Comp. ¶ 51, he does not provide a dollar amount of the underpayment and fails to include any amount for such an underpayment in the Damages Chart.  Thus, we do not consider this claim further.

at an overtime rate of $20.25 per hour (13.50 * 1.5).  As reflected on the "Overtime Wage

Chart," annexed as Exhibit B, Camano should be awarded $162,879.78 for unpaid overtime.

     D.  Unpaid Spread of Hours

Under NYLL, an employee is entitled to an extra hour's pay at the minimum wage rate

for any day for which "the spread of hours exceeds 10."  N.Y. Comp. Codes R. & Regs. tit. 12,

§ 146-1.6(a).  "The spread of hours is the length of the interval between the beginning and end of

an employee's workday."  N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.  "Effective as of

January 1, 2011, the NYLL was amended such that the spread of hours regulations 'apply to all

employees in restaurants and all-year hotels, regardless of a given employee's regular rate of

pay.'"  Andrade v. 168 First Ave Rest. Ltd., 2016 WL 3141567, at *5 (S.D.N.Y. June 3, 2016)

(quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6(d)), adopted by, 2016 WL 3948101

(S.D.N.Y. July 19, 2016).

Camano attests that he worked between 12 and 12.5 hours a day, six days a week, from

May 18, 2014, through October 2019, see Camano Decl. ¶ 9; 11 hours a day, six days a week,

from November 2019, through December 15, 2019, see id. ¶ 10; Damages Chart at 2, and 11

hours a day, two days a week, from January 2020 through February 5, 2020, Camano Decl. ¶ 11.

To calculate the spread of hours, we multiply the number of days per week Camano worked in

excess of ten hours by the statutory minimum wage for the relevant period and then multiply that

number by the number of weeks in the pay period.  As reflected on the "Spread of Hours Chart,"

annexed as Exhibit C, Camano should be awarded $18,213.00 for unpaid spread of hours.

     E.  Liquidated Damages

Camano seeks liquidated damages for 100% of the unpaid wages.  See PFF ¶ 51.  "The

NYLL provides for a liquidated damages award equal to 100 percent of the plaintiff's actual

damages, 'unless the employer proves a good faith basis to believe that its underpayment of

wages was in compliance with the law.'" Callender v. Panabori Food Corp., 2018 WL 4565876,

at *13 (S.D.N.Y. July 11, 2018) (quoting N.Y. Lab. Law §§ 198(1-a), 663(1)), adopted by, 2018

WL 3728931 (S.D.N.Y. Aug. 6, 2018).  La Unica has defaulted and therefore not provided any

evidence to suggest it had a good faith basis to believe its underpayment complied with the law.

Accordingly, Camano should be awarded 100% of his "unpaid wages, which includes unpaid

minimum wage, unpaid overtime, and unpaid spread-of-hours." Villanueva, 500 F. Supp. 3d at

239.  This amounts to $188,292.78.

     F.  Failure to Provide Notices and Wage Statements under NYLL

     N.Y. Lab. Law § 195(1) requires that, at the time of hiring, an employer "provide his or

her employees, in writing in English and in the language identified by each employee as [their]

primary language," notice of

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day,
> week, salary, piece, commission, or other; allowances, if any, claimed as part of
> the minimum wage, including tip, meal, or lodging allowances; . . . the regular
> pay day designated by the employer in accordance with section one hundred
> ninety-one of this article; the name of the employer; any "doing business as"
> names used by the employer; the physical address of the employer's main office
> or principal place of business, and a mailing address if different; the telephone
> number of the employer; plus such other information as the commissioner deems
> material and necessary.

Id. § 195(1)(a); accord Franco v. Jubilee First Ave. Corp., 2016 WL 4487788, at *13 (S.D.N.Y.

Aug. 25, 2016).  The notice must also state an employee's regular hourly rate and overtime rate

of pay.  N.Y. Lab. Law § 195(1)(a).  Since February 25, 2015, the statutory damages for

violating the notice requirement has been up to $50 per workday for a maximum of $5,000.00.

N.Y. Lab. Law § 198(1-b).  Camano affirms that La Unica "did not give any notice to [him], in

English [or] in Spanish ([his] primary language), of [his] rate of pay, employer's regular pay day,

and such other information as required by NYLL § 195(1)."  Camano Decl. ¶ 24.  Given the

length of Camano's employment with La Unica after February 25, 2015, see Camano Decl. ¶¶ 9-

11, Camano is eligible for up to $5,000.00 in statutory damages.  The award for a violation of

section 195(1) is permissive not mandatory.  See Pugh v. Meric, 2019 WL 2568581, at *2

(S.D.N.Y. June 20, 2019) ("The use of the word 'may' in NYLL § 198(1-b) indicates that

recovery of damages under this sub-section is not automatic, particularly in light of the

contrasting use of 'shall' in Section 198(1-d).").  Nonetheless, in light of La Unica's default, and

the complete failure to provide any explanation for its violation of the statute, the maximum of

$5,000.000 should be awarded.

Furthermore, since April 9, 2011, NYLL has required employers to "furnish each

employee with a statement with every payment of wages," which must include, inter alia, the rate

of payment, the gross wages provided, and the applicable overtime rate.  N.Y. Lab. Law

§ 195(3).  Camano affirms that La Unica failed to "provide [him] an accurate statement of

wages, as required by NYLL § 195(3)," Camano Decl. ¶ 23, and has therefore established La

Unica violated N.Y. Lab. Law § 195(3).  Since February 27, 2015, the statute provides for a

penalty of $250 for each workday that the violations occurred, not to exceed $5,000.00.  See

N.Y. Labor Law § 198(1-d).  This penalty is "mandatory."  Pugh, 2019 WL 2568581, at *2.

Camano should therefore be awarded $5,000.00 in statutory damages for the wage statement

violations.

In total, Camano should be awarded $10,000.00 in statutory damages under the NYLL.

G.  Pre-Judgment Interest

Camano argues he is "entitled to an award of prejudgment interest on the minimum and

overtime damages."  PFF ¶ 56.  A plaintiff who prevails on a NYLL-wage claim is entitled to

prejudgment interest on any "underpayment" of wages.  See N.Y. Lab. Law § 198(1-a);

Schalaudek v. Chateau 20th St. LLC, 2017 WL 729544, at *10-11 (S.D.N.Y. Feb. 24, 2017),

modified and adopted by, 2017 WL 1968677 (S.D.N.Y. May 11, 2017); Santana v. Latino

Express Rests., Inc., 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016); Castillo v. RV Transport,

Inc., 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016).  While "a plaintiff who receives FLSA

liquidated damages may not also receive pre-judgment interest . . . liquidated damages under the

NYLL are considered punitive in nature, thus enabling a plaintiff to recover both liquidated

damages and pre-judgment interest."  Villanueva, 500 F. Supp. 3d at 243.  However, "the award

of prejudgment interest applies only to the amount of underpayment of wages, not the liquidated

damages."  Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

"Prejudgment interest is [also] not available for violations of the wage statement or wage notice

provisions."  Maria v. Rouge Tomate Chelsea LLC, 2020 WL 6049893, at *6 (S.D.N.Y. Oct. 14,

2020), adopted by, 2021 WL 734958 (S.D.N.Y. Feb. 25, 2021).

Prejudgment interest in New York runs at the rate of nine percent per annum.  N.Y.

C.P.L.R. §§ 5001(a), 5004.  The starting date from which a court computes this interest is "the

earliest ascertainable date the cause of action existed."  Conway v. Icahn & Co., Inc., 16 F.3d

504, 512 (2d Cir. 1994) (quoting N.Y. C.P.L.R. § 5001(b)).  However, "[w]here such damages

were incurred at various times, interest shall be computed upon each item from the date it was

incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R.

§ 5001(b); see also Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998) ("New York

law leaves to the discretion of the court the choice of whether to calculate prejudgment interest

based upon the date when damages were incurred or 'a single reasonable intermediate

date,'. . . .") (citing <u>155 Henry Owners Corp. v. Lovlyn Realty Co.</u>, 231 A.D.2d 559, 560-61 (2d Dep't 1996)).

Here, Camano's claims for unpaid wages arose on different dates from May 18, 2014, to February 5, 2020.  While Camano asks that we calculate prejudgment interest "from February 16, 2017," PFF ¶ 58, the midpoint date of his relevant employment period is in fact March 27, 2017.  Accordingly, Camano is entitled to prejudgment interest on his unpaid-wage damages of $170,079.78 ($7,200.00 + $162,879.78) from March 27, 2017, until the date judgment is entered. This amounts to $41.94 per day ([170,079.78 * .09] / 365 days).[4]

H.   <u>Attorneys' Fees</u>

Camano has prevailed on his NYLL claims and is therefore entitled to an award of reasonable attorneys' fees.  <u>See</u> N.Y. Lab. Law § 663(4).  As has been frequently stated, in determining a statutory fee award, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 186 (2d Cir. 2008) (punctuation omitted) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)); <u>accord</u> <u>Stanczyk v. City of N.Y.</u>, 752 F.3d 273, 284 (2d Cir. 2014).  This calculation yields a "presumptively reasonable fee," <u>Arbor Hill</u>, 522 F.3d at 183 (punctuation omitted), and is commonly referred to as the "lodestar," <u>id.</u> (punctuation omitted); <u>see also</u>

---

[4] While pre-judgment interest would normally also be available on Camano's unpaid spread of hours, <u>Perez v. Rossy's Bakery & Coffee Shop, Inc.</u>, 2021 WL 1199414, at *9 (S.D.N.Y. Mar. 30, 2021) ("Prejudgment interest is calculated based on a plaintiff's NYLL unpaid minimum, overtime and spread of hours wage claims.") (punctuation omitted), Camano only requests pre-judgment interest "on the minimum and overtime damages," PFF ¶ 56.

Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009).  Using the "lodestar" method, Camano requests $10,850.60 in attorneys' fees.  See PFF ¶ 62.

It is well-established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  Fee applications that do not contain such supporting data "should normally be disallowed." Id. at 1154; accord Barrera v. Brooklyn Music, Ltd., 346 F. Supp. 2d 400, 412 (S.D.N.Y. 2004).  As we have previously explained, "[w]hile it is permissible to provide a summary of time records (such as may appear on an invoice) in lieu of actual records, a person with knowledge must still provide the court with competent evidence that the summary is in fact based on time records that were contemporaneously made by each of the attorneys." Rouge Tomate, 2020 WL 6049893, at *8.  While the proposed conclusions of law submitted by Camano assert that "Plaintiff's attorney has submitted a compilation of contemporaneous time records," PFF ¶ 63, no person with knowledge has provided any sworn evidence that the invoice submitted is based on time records that were contemporaneously made by each attorney.  Instead, Camano's attorney submits a declaration stating only that the declaration attaches "an invoice generated by Michael Faillace & Associates, P.C., . . . reflecting costs and attorneys' fees incurred to date." Sojo Decl. ¶ 8.  In other words, Camano's attorney makes no claim that the invoice is based on contemporaneous time records kept by each attorney.  Accordingly, attorneys' fees should not be awarded. [5]

---

[5]  Several months before Camano's counsel filed this declaration, this Court warned counsel's firm that competent evidence of origin is required when submitting a summary of time records.  See Rouge Tomate, 2020 WL 6049893, at *8.  Notwithstanding this warning, counsel failed to provide any such competent evidence.

A prevailing plaintiff under NYLL is also entitled to costs, which "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (punctuation omitted); accord Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012). Here, Camano seeks $470.00 in costs consisting of a $400.00 filing fee and a $70.00 process server fee. See Attorney Invoice at 7. These costs are recoverable. See, e.g., Villanueva, 500 F. Supp. 3d at 243 (awarding costs for a filing fee and process server fees). Accordingly, Camano should be awarded $470.00 in costs.

I.  Offset

Camano agrees that any award of damages in this inquest should be reduced by the $22,000 paid by the non-defaulting individual defendants pursuant to the offer of judgment. See Offset Let. Accordingly, the award should be reduced by $22,000.00.

\*   \*   \*

In sum, Camano should be awarded $7,200.00 in unpaid minimum wage; $162,879.78 in unpaid overtime; $18,213.00 in unpaid spread of hours; $188,292.78 in liquidated damages; $10,000.00 in statutory damages; $470.00 in costs; and interest at a rate of $41.94 per day from March 27, 2017, and continuing until the date judgment is entered on his unpaid wages. The total amount due before the interest calculation is $387,055.56. Camano's final judgment should be reduced by $22,000.00, to $365,055.56, to account for the offer of judgment by the two non-defaulting defendants.

Additionally, Camano requests that the judgment include a provision automatically increasing the judgment by the amount set forth in N.Y. Lab. Law § 198(4). See PFF ¶ 67. N.Y. Lab. Law § 198(4) provides that:

> Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

Accordingly, if any part of the judgment is unpaid at the expiration of such time, and no appeal is pending, the judgment should provide that it is increased by 15 percent.

III.  CONCLUSION

Camano is entitled to a judgment in the amount of $365,055.56 plus prejudgment interest calculated from March 27, 2017, to the date judgment is entered at the rate of $41.94 per day on his unpaid wages.  The text of the judgment should provide that if the judgment is not entirely paid within 90 days of judgment, or 90 days after the expiration of appeal, whichever is later, and no appeal is pending, then the total amount of judgment shall automatically increase by fifteen percent.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections or responses must be directed to Judge Furman.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 12, 2021
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies mailed to:

La Unica Caridad Inc.
2199 Broadway
New York, NY 10024

and

La Unica Caridad Inc.
250 West 78th Street
New York, NY 10024

**Exhibit A: Minimum Wage Chart**

| Pay Period | Number of Weeks in Pay Period | Number of non-Overtime Hours Worked | Amount Paid per Week | Regular Rate (Amount Paid / Number of non-Overtime Hours Worked) | Statutory Minimum Wage | Total Underpaid per Week ((Greater of Regular Rate or Statutory Minimum Wage * Hours Worked) - Amount Paid) | Total Underpaid (Total Underpaid per Week * Number of Weeks in Pay Period) |
|---|---|---|---|---|---|---|---|
| 5/18/14 - 12/30/14 | 32 | 40 | $420.00 | $10.50 | $8.00 | $0.00 | $0.00 |
| 12/31/14 - 12/30/15 | 52 | 40 | $420.00 | $10.50 | $8.75 | $0.00 | $0.00 |
| 12/31/15 - 12/30/16 | 52 | 40 | $420.00 | $10.50 | $9.00 | $0.00 | $0.00 |
| 12/31/16 - 12/30/17 | 52 | 40 | $420.00 | $10.50 | $10.50 | $0.00 | $0.00 |
| 12/31/17 - 12/31/18 | 52 | 40 | $420.00 | $10.50 | $12.00 | $60.00 | $3,120.00 |
| 1/1/2019 - 10/31/19 | 43 | 40 | $470.00 | $11.75 | $13.50 | $70.00 | $3,010.00 |
| 11/1/19 - 12/15/19 | 6 | 40 | $470.00 | $11.75 | $13.50 | $70.00 | $420.00 |
| 12/16/19 - 12/31/19 | 2 | 33 | $470.00 | $14.24 | $13.50 | $0.00 | $0.00 |
| 1/1/20 - 2/5/20 | 5 | 22 | $200.00 | $9.09 | $15.00 | $130.00 | $650.00 |
| | | | | | | | |
| | | | | | | | |
| | | | | | | Total Unpaid Minimum Wage | $7,200.00 |

19

**Exhibit B: Overtime Wage Chart**

| Pay Period | Number of Weeks in Pay Period | Regular Rate | Statutory Minimum Wage | Overtime Rate | Hours Worked Per Week | Hours Worked Overtime Per Week | Overtime Unpaid per Week (Overtime Rate * Hours Worked Overtime per Week) | Total Overtime Unpaid (Total Overtime Unpaid per Week * Number of Weeks in Pay Period) |
|---|---|---|---|---|---|---|---|---|
| 5/18/14 - 12/30/14 | 32 | $10.50 | $8.00 | $15.75 | 73.5 | 33.5 | $527.63 | $16,884.16 |
| 12/31/14 - 12/30/15 | 52 | $10.50 | $8.75 | $15.75 | 73.5 | 33.5 | $527.63 | $27,436.76 |
| 12/31/15 - 12/30/16 | 52 | $10.50 | $9.00 | $15.75 | 73.5 | 33.5 | $527.63 | $27,436.76 |
| 12/31/16 - 12/30/17 | 52 | $10.50 | $10.50 | $15.75 | 73.5 | 33.5 | $527.63 | $27,436.76 |
| 12/31/17 - 12/31/18 | 52 | $10.50 | $12.00 | $18.00 | 73.5 | 33.5 | $603.00 | $31,356.00 |
| 1/1/2019 - 10/31/19 | 43 | $11.75 | $13.50 | $20.25 | 73.5 | 33.5 | $678.38 | $29,170.34 |
| 11/1/19 - 12/15/19 | 6 | $11.75 | $13.50 | $20.25 | 66 | 26 | $526.50 | $3,159.00 |
| 12/16/19 - 12/31/19 | 2 | $14.24 | $13.50 | $21.36 | 33 | 0 | $0.00 | $0.00 |
| 1/1/20 - 2/5/20 | 5 | $9.09 | $15.00 | $22.50 | 22 | 0 | $0.00 | $0.00 |
| | | | | | | | | |
| | | | | | | | Total Unpaid Overtime | $162,879.78 |

**Exhibit C: Spread of Hours Chart**

| Pay Period | Number of Weeks in Pay Period | Spread of Hours Days Worked | Statutory Minimum Wage | Spread of Hours Unpaid ((Minimum Wage * Spread of Hours Days Worked) * Number of Weeks in Pay Period) |
|---|---|---|---|---|
| 5/18/14 - 12/30/14 | 32 | 6 | $8.00 | $1,536.00 |
| 12/31/14 - 12/30/15 | 52 | 6 | $8.75 | $2,730.00 |
| 12/31/15 - 12/30/16 | 52 | 6 | $9.00 | $2,808.00 |
| 12/31/16 - 12/30/17 | 52 | 6 | $10.50 | $3,276.00 |
| 12/31/17 - 12/31/18 | 52 | 6 | $12.00 | $3,744.00 |
| 1/1/2019 - 10/31/19 | 43 | 6 | $13.50 | $3,483.00 |
| 11/1/19 - 12/15/19 | 6 | 6 | $13.50 | $486.00 |
| 12/16/19 - 12/31/19 | 2 | 0 | $13.50 | $0.00 |
| 1/1/20 - 2/5/20 | 5 | 2 | $15.00 | $150.00 |
| | | | | |
| | | | | |
| | | | Total Spread of Hours | $18,213.00 |